UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERNARDINO CABOT MANZANO, | No. 2:18-cv-01397 CKD |
| Plaintiff, | |
| v. | ORDER |
| ANDREW M. SAUL, Commissioner of Social Security, | |
| Defendant. | |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). The parties have consented to Magistrate Judge jurisdiction to conduct all proceedings in the case, including the entry of final judgment. For the reasons discussed below, the court will grant plaintiff's motion for summary judgment and deny the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born in 1962, applied on February 21, 2014 for SSI and Title II disability insurance benefits, alleging disability beginning December 18, 2013. Administrative Transcript ("AT") 17, 61. Plaintiff alleged he was unable to work due to congestive heart failure, hypertension, gout, limited mobility, inability to sit or stand for long periods of time, back pain,

high blood pressure, severe migraines, inability to concentrate or focus, and body aches. AT 61-

62. In a decision dated March 2, 2017, the ALJ determined that plaintiff was not disabled.[1] AT

17-34. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. For purposes of the claimant's application for benefits under Title II of the Social Security Act, the claimant remained insured through June 30, 2015.

> 2. The claimant has not engaged in substantial gainful activity after December 18, 2013, the alleged onset date.

> 3. The claimant has the following severe impairments: congestive heart failure, cardiomyopathy, hypertension, gout, osteoarthritis and hallux deformity at the left foot (status post bunionectomy and first metatarsophalangeal fusion), osteoarthritis and hallux deformity at the right foot, and obesity.

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work except that: the claimant can occasionally climb ramps or stairs; the claimant can never climb ladders, ropes, or scaffolds; the claimant can occasionally bend, stoop, kneel, crouch, and crawl; the claimant must avoid hazards, such as unprotected heights and moving machinery; and the claimant must avoid concentrated exposure to dust, fumes, odors, gases, or other pulmonary irritants.

6. The claimant is capable of performing past relevant work as a security guard and a social services aide. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7. In the alternative that the claimant could not perform any past relevant work, considering the claimant's age, education, work experience, and residual functional capacity, other jobs would exist in significant numbers in the national economy that the claimant could perform.

8. The claimant has not been under a disability, as defined in the Social Security Act, from December 18, 2013 through the date of this decision.

AT 19-34.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ improperly weighed the opinion of examining physician Dr. Hernandez; (2) the ALJ's residual functional capacity finding is based on insubstantial evidence; and (3) the ALJ improperly discounted plaintiff's testimony.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is

3

responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

Before turning to plaintiff's claims, the court notes the following background information: Plaintiff stopped working in December 2012 after he was assaulted while working as a security officer. AT 45, 287, 778. In February 2013, he presented to an emergency room (ER) with breathing difficulties (AT 452, 519) and, after testing, was diagnosed with acute decompensated systolic heart failure, severe cardiomyopathy, severe mitral regurgitation, chronic kidney disease, hypertension, and a history of gout. AT 519.

Plaintiff was hospitalized for eight days in December 2013 for conditions including a gout attack and the likely passing of a kidney stone. AT 554. His discharge diagnoses included chronic congestive heart failure with systolic dysfunction secondary to nonischemic cardiomyopathy, pulmonary hypertension, chronic kidney disease, and an acute gout attack. AT 554.

In July 2015, plaintiff was briefly hospitalized after presenting with chest pain and dizziness. AT 817-835. In October 2015, plaintiff underwent surgery on his left foot that consisted of joint fusion and insertion of a plate and screw. AT 1048-1049. In August 2016, he

1  presented to the ER after experiencing chest pain and difficulty breathing while riding his bike.

2  AT 1287-1288, 1354.  After his symptoms improved and he was discharged, he was examined by

3  a physician at the cardiac clinic.  AT 1354.

4      A.  Medical Evidence

5      Plaintiff asserts that the ALJ failed to give specific and legitimate reasons for rejecting the

6  opinion of Dr. Manuel Hernandez, who examined plaintiff at the request of the state agency on

7  May 9, 2014.  See AT 777-781.  Plaintiff further argues that the ALJ rejected Dr. Hernandez's

8  opinion based on an impermissible lay interpretation of significant medical tests and findings,

9  such that the residual functional capacity (RFC) is not based on substantial evidence.  As these

10  arguments are closely related, the undersigned considers them together.

11      Residual functional capacity is what a person "can still do despite [the individual's]

12  limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a) (2003); see also Valencia v. Heckler, 751 F.2d

13  1082, 1085 (9th Cir. 1985) (residual functional capacity reflects current "physical and mental

14  capabilities").  RFC is assessed based on the relevant evidence in the case record, including the

15  medical history, medical source statements, and subjective descriptions and observations made by

16  the claimant, family, neighbors, friends, or other persons.  20 C.F.R. §§ 404.1545(a)(1),

17  404.1545(a)(3).  When assessing RFC, the ALJ must consider the claimant's "ability to meet the

18  physical, mental, sensory, and other requirements of work[.]"  20 C.F.R. §§ 404.1545(a)(4).

19      The weight given to medical opinions depends in part on whether they are proffered by

20  treating, examining, or non-examining professionals.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir.

21  1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a

22  greater opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80

23  F.3d 1273, 1285 (9th Cir. 1996).

24      To evaluate whether an ALJ properly rejected a medical opinion, in addition to

25  considering its source, the court considers whether (1) contradictory opinions are in the record,

26  and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

27  treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81

28  F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be

rejected for "specific and legitimate" reasons, that are supported by substantial evidence. Id. at

830. While a treating professional's opinion generally is accorded superior weight, if it is

contradicted by a supported examining professional's opinion (e.g., supported by different

independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d

1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In

any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical

findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory,

minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a

non-examining professional, without other evidence, is insufficient to reject the opinion of a

treating or examining professional. Lester, 81 F.3d at 831.

In addition to examining plaintiff, Dr. Hernandez reviewed records of his hospitalizations

in February and December 2013. AT 777-778, 780-781. Dr. Hernandez opined that, "given his

underlying cardiomyopathy," plaintiff had certain functional limitations, set forth below.

The ALJ addressed Dr. Hernandez's opinion as follows:

> [O]n May 9, 2014, internal medicine consultative examiner, Dr.
> Hernandez, indicated that: the claimant can occasionally lift and
> carry 20 lbs.; the claimant can frequently lift and carry 10 lbs.; the
> claimant can stand and walk for two hours during an eight-hour
> workday; the claimant can sit for at least six hours during an eight-
> hour workday; and the claimant would have no postural or
> environmental limitations.
>
> I give little weight to this medical opinion. First, Dr. Hernandez
> provided no explanations to substantiate several of his conclusions
> involving the claimant's functional abilities. Second, Dr. Hernandez
> determined that the claimant would have no postural or
> environmental limitations, yet the record supports a finding that the
> claimant would have such restrictions due to the reasons discussed
> above in detail. Additionally, while Dr. Hernandez opined that the
> claimant would be limited to standing and walking for two hours
> during an eight-hour workday, I note that Dr. Hernandez only
> reviewed the echocardiogram from February of 2013 in rendering his
> assessment, rather than more recent results from cardiac testing.
> Thus, Dr Hernandez would have been unaware that subsequent
> testing demonstrated an appreciable improvement in the claimant's
> cardiac functioning [citations].[2]

---

[2] The ALJ cited AT 573-577 (December 2013 cardiology reports from Methodist Hospital of
Sacramento); AT 615-618 (same); AT 831-835 (July 2015 EKG and evaluation for chest pain);
AT 1336-1339 (August 2016 hospital discharge order and related records).

Furthermore, Dr. Hernandez's opinion that the claimant would be limited to standing and walking for no more than two hours during a normal workday cannot easily be reconciled with his examination findings of elevated blood pressure of 144/80, but an oxygen saturation level of 98 percent on room air, a regular heart rate and rhythm, no edema or cyanosis at the extremities, no tenderness at the joints of the lower extremities, full motor strength and intact sensation at the lower extremities, and a gait within normal limits. On these bases, I afford little weight to Dr. Hernandez's medical opinion.

AT 31 (record citations to Dr. Hernandez's report omitted).

In contrast, the ALJ gave great weight to certain portions of the August 8, 2014 opinion of State agency physician Dr. S. Hanna, which was based on a review of plaintiff's medical records to date. AT 29-30, 108. While the RFC included limitations not opined by Dr. Hanna, it reflected the limitations opined by Dr. Hanna as to lifting, carrying, standing, walking, and sitting, and other functions. AT 23, 29-30. The ALJ explained his reasons for adopting these portions of Dr. Hanna's opinion, writing in part:

[T]he State agency physician's opinion pertaining to the claimant's lifting and carrying limitations is reasonable, because objective testing taken during the alleged period of disability revealed evidence of cardiomegaly and moderate mitral valve regurgitation, the claimant intermittently demonstrated a systolic murmur on physical examination, and the claimant reported dyspnea and occasional episodes of chest pains at medical visits during the period at issue.

[T]he State agency physician's opinion that the claimant would have no appreciable standing and walking limitations is consistent with the totality of the evidence, as echocardiograms showed no more than mildly decreased left ventricular systolic and diastolic function during the alleged period of disability, such testing revealed no appreciable right ventricular systolic and diastolic function, cardiac stress testing evidenced fair exercise tolerance and no ischemia, and the claimant did not exhibit persisting edema at the lower extremities, cyanosis, or significantly reduced oxygen saturation on room air on physical examination.

AT 30.

Plaintiff asserts that the ALJ impermissibly relied on his lay interpretation of post-2014 medical records that were never reviewed by a consultative examiner, or any other physician, for the purpose of evaluating plaintiff's disability claim. Plaintiff points out that "no physician reviewed records of [his] extensive treatment at Kaiser, beginning in July 2015, that [generated]

7

test results and clinical findings" including an echocardiogram, pulmonary function testing, two electrocardiograms, left foot surgery, and treatment for gout. See AT 801-1397. These records included a July 2015 electrocardiogram showing multiple premature ventricular contractions (PVCs) (AT 822); a July 2015 examination of plaintiff's heart in which a "loud murmur" was noted (AT 834); a December 2015 pulmonary function test that showed moderate restrictive process as demonstrated by lung volume measurements and noted that plaintiff was unable to reach the required inspiratory threshold for diffusing capacity measurement, despite multiple attempts (AT 1153); an August 2016 echocardiogram ordered due to a loud systolic murmur and showing mitrovalve regurgitation (AT 1303, 1305, 1307); and an August 2016 diagnosis of mitral valve regurgitation after an episode of chest pain and shortness of breath (AT 1354).

Instead of citing a medical opinion showing improvement in plaintiff's condition after 2014, the ALJ reviewed the Kaiser records and concluded that "subsequent testing demonstrated an appreciable improvement in the claimant's cardiac functioning." AT 31; see AT 25-29 (ALJ's summary of extensive medical evidence in 2015 and 2016); AT 26 (ALJ's review of multiple cardiac examinations in 2015 and 2016, concluding that "[m]ore recent physical examination findings . . . do not support the claimant's allegations of disabling symptoms and work-reclusive limitations secondary to his cardiac impairments."). Plaintiff argues that the ALJ's lay interpretation of the medical evidence does not constitute substantial evidence in support of the RFC.

"[I]t is well-settled law that an ALJ may not render her own medical opinion and is not empowered to independently assess clinical findings." Pulido v. Berryhilll, 2018 WL 4773109, *7 (E.D. Cal. Oct. 2, 2018), citing Tackett v. Apfel, 180 F.3d 1094, 1102-03 (9th Cir. 1999) (holding an ALJ erred in rejecting physicians' opinions and rendering his own medical opinion); Banks v. Barnhart, 434 F. Supp. 2d 800, 805 (C.D. Cal. 2006) ("An ALJ cannot arbitrarily substitute his own judgment for competent medical opinion, and he must not succumb to the temptation to play doctor and make his own independent medical findings"); Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (as a lay person, the ALJ is "simply not qualified to interpret raw medical data in functional terms"). A claimant's residual functional capacity is not a medical

8

opinion, but is an issue to be decided by the ALJ. 20 C.F.R. §§ 404.1527(d)(2), 416.920(d)(2).

However, the finding must be supported by substantial evidence in the record and the ALJ must

explain his reasoning behind the RFC. 42 U.S.C. § 405(b); 20 C.F.R. §§ 404.1520c, 416.920c.

Here, because the ALJ's rejection of the examining physician's opinion and the RFC for light

work were based on an impermissible lay interpretation of clinical evidence in 2015 and 2016, the

RFC is not supported by substantial evidence, and plaintiff is entitled to summary judgment.[3]

CONCLUSION

With error established, the court has the discretion to remand or reverse and award

benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded

under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative
> proceedings would serve no useful purpose; (2) the ALJ has failed to
> provide legally sufficient reasons for rejecting evidence, whether
> claimant testimony or medical opinion; and (3) if the improperly
> discredited evidence were credited as true, the ALJ would be
> required to find the claimant disabled on remand.

Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014). Even where all the conditions for the

"credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when

the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within

the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d

403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative

proceedings would serve no useful purpose, it may not remand with a direction to provide

benefits."); Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir.

2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the

proper approach is to remand the case to the agency.").

Here, the record as a whole creates serious doubt as to whether plaintiff was disabled

during the relevant period. On remand, the ALJ is free to develop the record as needed, including

ordering a physician's review of plaintiff's post-2014 medical records relating to the alleged

---

[3] The court does not reach the remaining claim as to the credibility determination.

1  period of disability.  The court expresses no opinion regarding how the evidence should

2  ultimately be weighed, and any ambiguities or inconsistencies resolved, on remand.  The court

3  also does not instruct the ALJ to credit any particular opinion or testimony.  The ALJ may

4  ultimately find plaintiff disabled during the entirety of the relevant period; may find plaintiff

5  eligible for some type of closed period of disability benefits; or may find that plaintiff was never

6  disabled during the relevant period, provided that the ALJ's determination complies with

7  applicable legal standards and is supported by the record as a whole.

8     For the reasons stated herein, this matter will be remanded under sentence four of 42

9  U.S.C. § 405(g) for further administrative proceedings.

10     For the reasons stated herein, IT IS HEREBY ORDERED that:

11     1.  Plaintiff's motion for summary judgment (ECF No. 15) is granted;

12     2.  The Commissioner's cross-motion for summary judgment (ECF No. 16) is denied; and

13     3. This matter is remanded for further proceedings consistent with this order.

14  Dated:  August 19, 2019

15                   _____

                 CAROLYN K. DELANEY

16                   UNITED STATES MAGISTRATE JUDGE

21  2/manzano1397.ssi.ckd

10